456 So.2d 517 (1984)
Larry LAMBERT, As Personal Representative of the Estate of Vernon J. Lambert and Irene P. Lambert, Deceased, Appellant,
v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellee.
No. AT-394.
District Court of Appeal of Florida, First District.
September 13, 1984.
Louis K. Rosenbloum of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant.
Charles W. Dodson of Fuller & Johnson, Tallahassee, for appellee.
BARFIELD, Judge.
Larry Lambert appeals the summary judgment granted to Nationwide Mutual Fire Insurance Company in an action to recover damages under the underinsured motorist provisions of a Nationwide insurance policy issued to Lambert's parents.
On November 21, 1980, Vernon and Irene Lambert were killed in Alabama in an accident involving four vehicles. Their son filed suit in federal court in Alabama, claiming that the accident was caused by the negligence of the other three drivers. A settlement agreement was reached wherein each party contributed to a fund totalling $140,500,[1] of which the Lamberts' estates received $80,000. Nationwide consented to the settlement. The available insurance coverage from the three alleged tortfeasors in the Alabama action exceeded the underinsured motorist coverage in *518 Lambert's policy, although the coverage under the Cassidy policy alone was less than the available underinsured motorist coverage in the Lamberts' policy. Following the settlement, the Alabama action was dismissed with prejudice.
Lambert subsequently filed this action, alleging that only the Cassidy vehicle was at fault in the accident and that the underinsured motorist coverage of the Lambert policy was therefore available to answer for any damages sustained by the Lamberts that exceeded the settlement obtained in Alabama. The trial judge granted summary judgment for Nationwide, ruling that an "extension" of the holding in Gordon v. Phoenix Insurance Company, 242 So.2d 485 (Fla. 1st DCA 1970), precluded Lambert from proceeding in this action.
The trial court's reliance on Gordon v. Phoenix Insurance Company, supra, is misplaced. The owner and driver in Gordon were considered joint tortfeasors as a matter of law. The driver was insured; the owner was not insured. A judgment in excess of insurance was entered against the driver. Gordon accepted the limits of insurance and executed a satisfaction of judgment. The court held that the satisfaction of judgment released the uninsured, vicariously liable owner from any liability and that there was therefore no uninsured party from whom the injured party was legally entitled to recover damages. In the case at issue, the liability of the drivers of the three separate vehicles is in dispute. There has been no entry of judgment and no determination of liability; there has been instead a compromise settlement.
Appellant contends that there remains an issue of fact in this case whether either or both of the vehicles other than the Cassidy vehicle were jointly and severally liable for the death of the Lamberts. If that were the only consideration, summary judgment would have been improper. However, the underlying question in this case is whether the court should impose some form of estoppel on Lambert to prevent him from asserting inconsistent and contradictory positions with respect to the same matter.
The occasions for fashioning a remedy under the label of estoppel in order to prevent injustice are too numerous to count. The concept of estoppel against inconsistent positions in judicial proceedings is certainly not new. Palm Beach County v. Palm Beach Estates, 110 Fla. 77, 148 So. 544 (1933). Although in the Palm Beach County case the court made reference to the party seeking and securing a final order or judgment, it does not appear that such finality is necessary. In United Contractors, Inc. v. United Construction Corporation, 187 So.2d 695 (Fla. 2d DCA 1966), a party was not permitted to maintain pleadings inconsistent with his prior conduct. Other cases speak of a party pleading inconsistently with prior contentions that were "successfully maintained." Grauer v. Occidental Life Ins. Co. of California, 363 So.2d 583 (Fla. 1st DCA 1978), cert. den., 372 So.2d 468 (Fla. 1979). Our examination of Florida law does not reveal a decision directly on point with this case, in which a prior allegation in a legal proceeding set up the opportunity for a party to gain a financial advantage without the finality of a judicial determination. However, the extension of this estoppel concept, which is more in the nature of a rule of procedure or judicially established policy, is found in other jurisdictions.
In Levi v. Montgomery, 120 N.W.2d 383 (N.D. 1963), a minor injured when his employer's tractor passed over him sued the employer for negligence in failing to properly instruct. The seller of the tractor was joined as a defendant on a theory of negligence in selling defective equipment. Before trial, plaintiff settled with the seller and signed a release. At trial, the jury returned a verdict for the plaintiff, whereupon the employer moved for an order requiring the plaintiff to credit the employer with the amount received from the seller. The court held that where the plaintiff sues two or more defendants in tort and then gives a release to one or more of such defendants, the question at issue between the parties is determined by the pleadings.

*519 Even though the plaintiff now contends that he, in fact, had no cause of action in tort against one of the defendants, the court will consider the issues as framed by the pleadings. Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such case is: Was the defendant sued as a tort-feasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant. The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is wholly immaterial. The release and covenant not to sue discharges such defendant from any possible liability for any tort of which such defendant possibly might have been guilty. Whether he was, in fact, guilty of tort is immaterial where such defendant does not desire to try out the question and is willing to pay consideration and in good faith secures such release and covenant not to sue.
120 N.W.2d at 388-389. On petition for rehearing, the court responded to the plaintiff's argument that the court's holding (that the defendant seller would be deemed a tortfeasor under the circumstances) was inconsistent with prior decisions of the court holding that only formal judicial admissions which waived evidence by the adverse parties would be held conclusive on the pleader:
There is nothing inconsistent in these holdings of the court. Had this case gone to trial, the pleadings would not be conclusive on the plaintiffs. In fact, where a case goes to trial, the plaintiff is entitled to recover on any one of a number of causes, even though some may be inconsistent. But here we have the plaintiffs charging both defendants as tort-feasors in their complaint. Regardless of the merits of the action against it, one of the defendants was willing to buy its way out of a lawsuit. Under these circumstances, the plaintiffs will not be heard thereafter to contend that, although they did sue such defendant in tort, the defendant was not, in fact, liable in tort. The pleadings frame the issues, and the complaint against the defendant implement company, at the time of the release and covenant not to sue, charged it as a tort-feasor.
120 N.W.2d at 390.
In Loomis v. Church, 76 Idaho 87, 277 P.2d 561 (1954), a passenger in an automobile had signed a report of the accident and had verified a complaint wherein it was stated that the driver of the automobile had stopped at a stop sign, and had thereby obtained a settlement in the action against the other vehicle. The court held that the doctrine of estoppel was properly applicable in her subsequent action against the automobile driver under the guest statute, wherein she was attempting to claim that the driver refused to stop at the stop sign. The court noted:
It is quite generally held that where a litigant, by means of such sworn statements, obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter... .
The fact that this estoppel was not pleaded would not prevent our consideration of the issue, because the complaint in the former action was admitted without objection by appellant, and her counsel volunteered to stipulate that she received $3,500 in settlement of that action.
This Court, among many others, has held that where evidence of an estoppel is received without objection it becomes an issue in the case and may be acted upon by the court although not pleaded.
277 P.2d at 565.
We hold in this case that when Lambert alleged in the Alabama action the existence of three tortfeasors, including one of Nationwide's *520 insureds, and upon such allegations successfully secured payment from more parties than he is now claiming are liable, he precluded himself from later taking an inconsistent position in order to seek further recovery from Nationwide.
Since Lambert is precluded from asserting that only the Cassidy vehicle was negligent, no issue of fact remains to be determined and the summary judgment is AFFIRMED.
THOMPSON and NIMMONS, JJ., concur.
NOTES
[1] The insurer, for Cassidy, one of the alleged tortfeasors, contributed its policy limits of $50,000. It should be noted that Cassidy's insuror was Nationwide, the same insuror against whom recovery is sought in this action.